***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Parties are subject to the North Carolina Workers' Compensation Act and the Employee-Employer relationship existed between Plaintiff and Defendant-Employer on April 3, 2002.
2. Gallagher-Bassett Services, Inc. is the carrier for Defendant-Employer.
3. The Plaintiff's average weekly wage is $547.00 and her compensation rate is $364.67.
4. The Parties stipulated to a package of medical records that was marked as Stipulated Exhibit No. 1.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 33 years old at the time of the hearing before the deputy commissioner, and is a high school graduate.
2. Plaintiff became employed with defendant-employer in March of 2000 as the receptionist at the Facilities Services Department of defendant-employer. Prior to working as a receptionist for defendant-employer, she had been employed by defendant-employer for five years as a tape technician.
3. The receptionist job, which plaintiff performed, was an eight-hour per day, 40 hours per week job. Plaintiff had two 15-minute breaks together with a one-hour lunch break each day. Plaintiff's job as a receptionist involved a variety of tasks including greeting visitors, having visitors sign in, answering and talking on the phone, computer use, distribution of the mail three or four times per day, handing out parking passes and visitor passes, taking work orders over the phone or off the e — mail and preparing the work orders, and issuing card keys for the security system. In a typical eight-hour day, plaintiff would normally spend approximately two and one half hours working at the computer using the keyboard or mouse. Due to the nature of her job as a receptionist, plaintiff's computer use was interrupted. Therefore, the two and one half hours of computer use each day was spread out over the eight-hour workday.
4. Defendants' Exhibit No. 1 was received into evidence at the hearing before the deputy commissioner. This exhibit was a job video showing the various aspects of the receptionist job that plaintiff performed while working for defendant-employer.
5. During the time plaintiff worked for defendant-employer as a receptionist, she was 5 feet 5 inches tall and weighed approximately 200-205 pounds.
6. Plaintiff first noticed problems with her right wrist shortly before Christmas of 2001, at which time she had throbbing and burning in her right wrist. The first medical treatment that plaintiff received for her right wrist problems was on April 8, 2002 when she was seen by Dr. Gary Kuzma. Plaintiff continued seeing Dr. Kuzma up through January 24, 2003. During that course of treatment, Dr. Kuzma provided conservative care to plaintiff and did not perform any surgery on plaintiff's right hand or wrist.
7. Plaintiff last worked for defendant-employer on January 17, 2003. At that time, she was terminated by defendant-employer when she sent a pornographic e-mail. Since January 17, 2003, plaintiff worked for a graphics employer in August of 2003. She worked for this employer for only two days and was paid $7.00 per hour. Other than this employment, plaintiff has not tried to work anywhere else.
8. Eight or ten other employees have performed the same receptionist job as plaintiff did prior to plaintiff, and after plaintiff performed the job. None of the other employees who performed plaintiff's job have had any complaints or problems with their hands as a result of performing the receptionist job. The basic job duties performed by these other employees were substantially similar to the job duties performed by plaintiff, except that in earlier years, the job may have been more labor intensive and required more computer work than plaintiff was required to perform.
9. Plaintiff was first examined by Dr. Kimberly Barrie on February 13, 2003. Dr. Barrie is a board certified orthopaedic surgeon that practices at Triangle Orthopaedics in Durham, North Carolina. After medical school, she performed an orthopaedic residency at Yale University and then did a hand and micro vascular fellowship at the Mayo Clinic. Dr. Barrie specializes in the treatment of the hands and upper extremities and she dedicates approximately 90% of her practice to the treatment of the hands and upper extremities.
10. Dr. Barrie testified that carpal tunnel syndrome is the compression of the median nerve at the wrist. Dr. Barrie testified that a large percentage of carpal tunnel patients are female. Dr. Barrie also testified that a significant percentage of carpal tunnel cases are idiopathic in nature and the doctors can never really determine the cause of the compression of the median nerve.
11. Dr. Barrie continued to treat plaintiff after the initial visit, and diagnosed plaintiff with right carpal tunnel syndrome on April 2, 2003.
12. On April 16, 2003, Dr. Barrie performed a right open carpal release surgery on plaintiff and this surgery was successful.
13. As of June 2, 2003, plaintiff's symptoms in her right hand had completely been relieved by the surgery performed by Dr. Barrie. As of June 2, 2003, plaintiff had reached maximum medical improvement with no work restrictions.
14. On November 24, 2003, Dr. Barrie last saw plaintiff. Plaintiff came to see Dr. Barrie on this occasion at Dr. Barrie's request, prior to giving her deposition in this case. On this occasion, Dr. Barrie thought plaintiff was doing very well and had a complete resolution of the numbness and tingling that she had been experiencing preoperatively in her fingers. On this occasion, plaintiff told Dr. Barrie that she was using her right hand without any problems. On this occasion Dr. Barrie did not place any restrictions on plaintiff with regard to her ability to work.
15. Dr. Barrie testified that plaintiff's job as a receptionist with defendant-employer was not a significant cause of plaintiff's carpal tunnel syndrome.
16. Plaintiff has failed to come forward with any persuasive evidence to establish that her job as a receptionist with defendant-employer placed her at an increased risk of developing carpal tunnel syndrome as compared to the general population not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that her job as a receptionist with defendant-employer was a significant causal factor in the development of right carpal tunnel syndrome. The preponderance of the competent evidence in the record establishes that plaintiff's job as a receptionist for defendant-employer was not a significant causal factor in the Plaintiff's development of right carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. The Plaintiff's claim for workers' compensation benefits must be, and is hereby, DENIED.
2. Each party shall pay its own costs, except that defendants shall pay an expert witness fee of $385.00 to Dr. Kimberly Barrie.
This the ___ day of November, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER